

**Joseph M. Cerra**
E-Mail:   jcerra@lynchlawyers.com
Main Tel.:   (201) 288-2022
Direct Fax:   (201) 298-7745

February 13, 2026

The Honorable Steven Tiscione
United States Magistrate Judge
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

**Re:**   *SEC v. A.G. Morgan Financial Advisors, LLC, et al.*, Case No. 22-cv-3421-DG-ST
Defendants' Confidential Settlement Position Statement [2/18/2026]

Dear Judge Tiscione:

On behalf of Defendants A.G. Morgan Financial Advisors, LLC ("AGM"), Vincent J. Camarda, and James McArthur (collectively, "Defendants"), we respectfully submit this confidential settlement position statement in advance of the Court's settlement conference. Defendants are prepared to engage in good-faith discussions, but must apprise the Court of a material development: since this conference was requested by the parties, and scheduled, the government has initiated criminal proceedings against Camarda arising from substantially overlapping conduct. This parallel prosecution has fundamentally constrained Defendants' ability to negotiate comprehensive monetary terms, as Camarda's exposure to criminal fines, restitution, and forfeiture remains unresolved.

   A. **Background**

AGM is a Commission-registered investment adviser based in Massapequa, New York. Camarda is AGM's sole owner. McArthur served as Chief Compliance Officer from approximately 2015 through August 2020. The Commission's complaint arises from Defendants' connection to Complete Business Solutions Group, d/b/a Par Funding ("Par Funding"), a lending company in Court-ordered receivership since July 2020. *See SEC v. Complete Business Solutions Group, et al.*, No. 9:20-cv-81205 (S.D. Fla. 2020).

The Commission alleges two periods of activity. First, from August through November 2017, the Commission alleges Camarda and McArthur solicited approximately twelve AGM clients to invest roughly $2.6 million in Par Funding promissory notes while AGM was indebted to Par Funding on merchant cash advance loans. Defendants deny these solicitation and conflict-of-interest allegations. (Answer ¶¶ 50–81.) Critically, it is undisputed that AGM paid Par Funding in full on February 6, 2018—more than ten months before the second phase of alleged activity. (Compl. ¶ 84; Answer ¶ 84.)

The Honorable Steven Tiscione
United States Magistrate Judge
February 13, 2026
Page 2 of 3
Defendants' Confidential Settlement Position

Second, from December 2018 through July 2020, the Commission alleges Defendants raised funds through AGM Fund I and AGM Fund II, which issued promissory notes offering fixed interest of 9–14% with return of principal at twelve months. Defendants deny the scope and characterization of these activities. (Answer ¶¶ 82–118.)

All alleged conduct ceased no later than July 2020—over five years ago—with no evidence of ongoing violations. Defendants have asserted fourteen affirmative defenses, including that the notes are not securities under *Reves v. Ernst & Young*, 494 U.S. 56 (1990), reliance on advice of counsel, and good faith.

### B. Legal Context

The Commission faces significant legal obstacles. Its case depends entirely on classifying the promissory notes as securities—a premise far from settled under *Reves*. The promissory notes imposed unconditional repayment obligations on AGM and the AGM Funds regardless of Par Funding's performance; investors received fixed interest and return of principal, bearing AGM credit risk rather than enterprise risk. Courts routinely exclude such instruments from the securities laws. Under *Liu v. SEC*, 591 U.S. 71 (2020), disgorgement is limited to net profits causally connected to proven violations. The Commission's demand for $7,435,813 in commissions plus $2,092,953.36 in prejudgment interest does not account for legitimate expenses and substantially overstates recoverable relief. Third-tier penalties require proof of scienter and substantial investor losses, and permanent injunctive relief is unwarranted where conduct ceased over five years ago. *See SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980).

### C. The Commission's Sanctions Are Punitive, Not Remedial

The parallel criminal prosecution raises serious concerns for Defendants. While the Double Jeopardy Clause does not categorically preclude civil sanctions alongside criminal penalties, a civil sanction constitutes punishment for double jeopardy purposes when it serves the goals of retribution or deterrence rather than a remedial purpose. *United States v. Halper*, 490 U.S. 435 (1989). Here, the Commission's demanded relief is punitive in nature, not solely remedial. The Commission seeks permanent injunctions, maximum third-tier civil penalties, and disgorgement that far exceeds any demonstrated net profit—taken together, these sanctions function as punishment rather than equitable remediation. In *Halper*, the Supreme Court held that when a civil sanction bears no rational relation to the goal of making the government whole, it is punitive and implicates double jeopardy protections. The Commission's demand for comprehensive monetary and injunctive relief on top of a pending criminal prosecution crosses that line.

The Honorable Steven Tiscione
United States Magistrate Judge
February 13, 2026
Page 3 of 3
Defendant's Confidential Settlement Position

### D. Proposed Settlement Terms

**Consent Injunction, No Admission of Liability.** Defendants will consent to injunctive relief with no admission or denial of allegations, achieving deterrence and prospective compliance without findings that could prejudice Defendants in the criminal matter.

**Nominal Monetary Payment.** Defendants will make a nominal monetary payment. Given the punitive character of the Commission's monetary demands and the pending criminal prosecution, substantial disgorgement and penalties in this action would compound Camarda's exposure in a manner that is fundamentally punitive rather than remedial. Until the criminal matter resolves, Camarda's total financial obligations to the government remain unknown, and meaningful monetary terms cannot be negotiated in good faith.

**Dismissal of Claims Against McArthur.** McArthur served as CCO and received approximately 10% of revenues—a fraction of the compensation attributed to the alleged scheme. His limited role does not warrant the disproportionate remedies sought.

We respectfully request that the Court consider these changed circumstances in facilitating a productive settlement conference. The intervening criminal prosecution has materially altered the settlement landscape. Defendants' proposed terms—consent injunction, nominal payment, and dismissal of McArthur's claims—represent a reasonable resolution accounting for the Commission's regulatory interests, the significant legal obstacles it faces, and the double jeopardy concerns presented by the government's pursuit of cumulative punitive sanctions.

Defendants' settlement letter, forwarded to Plaintiff on February 11, 2026, as per this Court's Rule II(B)(1), is annexed.

Respectfully submitted,

*/s/ Joseph M. Cerra*
Joseph M. Cerra
JMC/pc
Attachment



**Joseph M. Cerra**
E-Mail:   jcerra@lynchlawyers.com
Main Tel: (201) 288-2022

February 11, 2026

Pascale Gurrier, Esq.
Senior Trial Counsel
U.S. Securities and Exchange Commission-Division of Enforcement
801 Brickell Ave Ste 1950
Miami, FL 33131-4901

Dear Ms. Gurrier:

We write in response to the Commission's February 4, 2026 settlement letter, submitted in advance of the February 18, 2026 settlement conference. Defendants appreciate the Commission's willingness to engage in settlement discussions. At the same time, we respectfully disagree with the Commission's characterization of both the strength of its claims and the scope of appropriate remedies. As outlined below, there are substantial legal and factual issues that materially limit the Commission's likelihood of success at trial and significantly constrain any recoverable relief.

### I.   The Promissory Notes at Issue Are Not Securities

A central premise of the Commission's claims is that the promissory notes issued by A.G. Morgan–affiliated entities constitute "securities." That premise is far from settled and is subject to serious challenge under governing precedent.

Critically, the notes at issue imposed unconditional repayment obligations on A.G. Morgan or the AGM Funds, regardless of whether Par Funding was successful or not. Investors were entitled to fixed interest and return of principal at maturity, irrespective of Par Funding's performance. As a result: (i) investors bore AGM credit risk, not Par Funding enterprise risk; (ii) repayment was not contingent on profits, business success, or managerial efforts of Par Funding; and (iii) the economic reality reflected a creditor–debtor relationship, not an investment in a common enterprise.

Accordingly, these instruments strongly resemble commercial notes—not securities. Courts routinely hold that notes establishing fixed returns and unconditional issuer liability fall outside the federal securities laws, particularly where investors do not share in business upside or downside.

Pascale Gurrier, Esq.
Senior Trial Counsel
U.S. Securities and Exchange Commission-Division of Enforcement
Page 2 of 3
February 11, 2026

The Commission's demand letter does not grapple with this issue, nor does it explain how the unconditional nature of the repayment obligation can be reconciled with a finding that the holders' rights were not contingent on the success of Par Funding.

## II.   The Commission's Injunctive Theory Is Unsupported

The Commission asserts that permanent injunctions are mandatory based on an asserted likelihood of future violations. The record does not support that conclusion.

The conduct alleged in the complaint ended no later than July 2020. There is no evidence of ongoing misconduct, no allegation of continued fundraising activity, and no showing that Defendants presently pose any risk of recurrence. Courts have consistently held that past conduct alone is insufficient to justify permanent injunctive relief, particularly where the alleged activity has ceased..

The Commission's reliance on generalized assertions of deterrence does not satisfy the required showing of a "cognizable risk of future harm."

## III.   Disgorgement Is Allowable Only To Provable Violations

Even assuming some measure of liability, the Commission's disgorgement demand is inflated. First, disgorgement is limited to net profits causally connected to a proven violation. Here, the Commission seeks to disgorge essentially all commissions received over multiple years without accounting for: (i) that the factual issue of distribution within the meaning of Section 5 must be resolved at trial; (ii) that the SEC faces a significant factual burden at trial of proving its claims against Camarda and A.G. Morgan under Sections 206(1) and 206(2); and (iii) that the alleged violations of Section 15(a)(1) must be premised, initially, on findings that the defendants effected transactions of securities for the benefit of others.  As to the third point, we remain skeptical of the SEC's theory that, with respect the AG Morgan promissory notes, that the defendants engaged in transactions in securities.

## IV.   Penalties and Follow-On Proceedings Are Disproportionate

The demand for third-tier penalties presupposes findings of fraud and scienter, which are hotly disputed and far from established. The Advisers Act claims, in particular, turn on disclosure theories that will require credibility determinations. Moreover, the threatened follow-on administrative proceedings materially alter the settlement calculus and raise serious proportionality concerns. Any resolution must account for the cumulative punitive effect of stacked remedies.

Pascale Gurrier, Esq.
Senior Trial Counsel
U.S. Securities and Exchange Commission-Division of Enforcement
Page 3 of 3
February 11, 2026

### V.     *Settlement Posture*

Defendants remain willing to engage in good-faith settlement discussions and to explore pragmatic resolutions that avoid the risks and expense of trial. However, any resolution must reflect the substantial litigation risk facing the Commission, the unsettled nature of the legal issues, and the limits imposed by governing Supreme Court precedent. We would propose a structure of a lump sum payment by Camarda and A.G. Morgan, and a dismissal of the claims against McArthur.

We look forward to addressing these issues further at the settlement conference.

Very truly yours,

*Joseph M. Cerra*

Joseph M. Cerra
JMC/pc
Attachments
cc: Co-Counsel (via email)